**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 0:26-CV-60131-KUNTZ/AUGUSTIN-BIRCH**

**LOUIS VUITTON MALLETIER,**

**Plaintiff,**

**v.**

**DELUXEDEALSHOPSVIP,**

**Defendant.**
______________________________________/

**REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT FINAL JUDGMENT AGAINST DEFENDANT**

This cause comes before the Court on Plaintiff Louis Vuitton Malletier's Motion for Entry of Default Final Judgment Against Defendant. DE 19. The Honorable Ed Artau, United States District Judge, referred the Motion to the undersigned United States Magistrate Judge for a report and recommendation. DE 20. Subsequent to that referral, Judge Artau transferred this case to the Honorable Jeffrey T. Kuntz, United States District Judge. DE 21. Defendant Deluxedealshopsvip did not respond, and the time for it to do so has passed. Having carefully considered the record and the Motion for Default Final Judgment and being otherwise fully advised, the Court **RECOMMENDS GRANTING** Plaintiff's Motion for Default Final Judgment [DE 19].

## I. Background

Plaintiff filed this action against Defendant on January 20, 2026. DE 1. Plaintiff alleges that "Defendant is an individual, business entity of unknown makeup, or an unincorporated association, who, upon information and belief, either resides and/or operates in a foreign jurisdiction and/or redistributes products from the same or similar sources in that location." *Id.* ¶

7. Defendant "operates under its E-commerce Store Name in tandem with electronic communication via private messaging applications and/or services." *Id.* ¶ 8. Plaintiff owns various trademarks registered on the Principal Register of the United States Patent and Trademark Office as shown in the table below ("Plaintiff's Marks"). *See id.* ¶ 14.

| **Trademark** | **Registration Number** | **Registration Date** | **Class(es) / Relevant Goods** |
|---|---|---|---|
| | 0,297,594 | September 20, 1932 | IC 018. Trunks, valises, traveling bags, satchels, hat boxes and shoe boxes used for luggage, hand bags, and pocketbooks. |
| LOUIS VUITTON | 1,045,932 | August 10, 1976 | IC 018. Luggage and ladies' handbags. |
| LV | 1,519,828 | January 10, 1989 | IC 018. Trunks, valises, traveling bags, satchels, hat boxes, and shoe boxes used for luggage, hand bags, pocketbooks. |
| LOUIS VUITTON | 1,990,760 | August 6, 1996 | IC 014. Watches and straps for wrist watches.<br><br>IC 016. Catalogues featuring luggage and travel accessories, bags, small leather goods, and garments; notebooks, anthologies, and pamphlets referring to travel; calendars; telephone indexes; fountain pens, ballpoint pens, nibs, covers for pocket and desk diaries, and checkbook holders.<br><br>IC 018. Trunks; traveling trunks; suitcases; traveling bags; luggage; garment bags for travel; hat boxes for travel; shoe bags for travel; umbrellas; animal carriers; rucksacks; haversacks; leather or textile shopping bags; beach bags; |

| | | | |
|---|---|---|---|
| | | | handbags; vanity cases sold empty; attaché cases; tote bags, travel satchels; clutch bags; briefcases; wallets; pocket wallets; credit card cases; business card cases; bill and card holders; checkbook holders; key cases; change purses; briefcase-type portfolios.<br><br>IC 024. Travel blankets.<br><br>IC 025. Shirts; sweatshirts; polo shirts; T-shirts; headwear; jackets; ties; belts; shawls; scarves. |
|  | 2,177,828 | August 4, 1998 | IC 014. Goods made of precious metals, namely, shoe ornaments, ornamental pins; jewelry, namely, rings, earrings, cufflinks, bracelets, charms, necklaces; horological instruments, straps for watches, watches, and wrist-watches, and cases for watches.<br><br>IC 018. Goods made of leather or imitations of leather are not included in other classes, namely, boxes made from leather; trunks, valises, traveling bags, luggage for travel, garment bags for travel, vanity cases sold empty, rucksacks, hand bags, beach bags, shopping bags, shoulder bags, attaché cases, briefcases, and fine leather goods, namely, pocket wallets, purses, leather key holders, business card cases, calling card cases, and credit card cases, umbrellas.<br><br>IC 025. Clothing and underwear, namely, ((shirts,)) ((waistcoats, raincoats, skirts, coats, pullovers, trousers, dresses, jackets,)) shawls, stoles, ((scarves, |

| | | | |
|---|---|---|---|
| | | | neckties, pocket squares,)) belts, shoes, boots, and sandals. |
| | 2,181,753 | August 18, 1998 | IC 014. Jewelry, namely, rings, ear rings, bracelets, charms, necklaces, horological instruments, straps for watches, watches, and wrist-watches, cases for watches.<br><br>IC 018. Goods made of leather or imitations of leather are not included in other classes, namely, boxes made from leather; trunks, valises, traveling bags, luggage for travel, garment bags for travel, vanity cases sold empty, rucksacks, hand bags, beach bags, shopping bags, shoulder bags, attaché cases, briefcases, and fine leather goods, namely, pocket wallets, purses, leather key holders, business card cases, calling card cases, credit card cases, and umbrellas.<br><br>IC 025. Clothing and underwear, namely, shirts, waistcoats, raincoats, skirts, coats, pullovers, trousers, dresses, jackets, shawls, stoles, scarves, neckties, pocket squares, belts, shoes, boots, and sandals. |
| LOUIS VUITTON PARIS | 2,346,373 | May 2, 2000 | IC 014. Jewelry, namely, rings, belt buckles, cufflinks, bracelets, charms, brooches, necklaces, horological *instruments*, watches, cases for watches.<br><br>IC O 18. Goods made of leather or of imitations of leather not included in other classes, namely, boxes of leather used for travel purposes, hat boxes for travel; trunks, valises, |

| | | | |
|---|---|---|---|
| | | | travelling bags, traveling sets for containing cosmetics, garment bags for travel, rucksacks, handbags, beach bags, shopping bags, shoulder bags, briefcases, pouches; fine leather goods, namely, pocket wallets, purses, key cases, card holders, checkbook holders.<br><br>IC 025. Clothing and underwear, namely, sweaters, shirts, suits, waistcoats, skirts, coats, pullovers, trousers, dresses, clothing jackets, shawls, stoles, scarves, neckties, clothing belts, bathing suits, footwear; head wear and waterproof clothing, namely, raincoats. |
| | 2,773,107 | October 14, 2003 | IC 014. Jewelry including ((rings,)) ((earrings,)) cuff links, bracelets, ((charms,)) necklaces, ((and medallions;)) horological and chronometric instruments and apparatus, namely, watches.<br><br>IC 018. Travel bags, travel bags made of leather; luggage trunks and valises, garment bags for travel, vanity-cases sold empty; rucksacks, shoulder bags, handbags; attaché cases, briefcases, drawstring pouches, pocket wallets, purses, umbrellas, business card cases made of leather or of imitation leather, credit card cases made of leather or of imitation leather; key holders made of leather or of imitation leather.<br><br>IC 025. Clothing, namely, ((shirts, T-shirts,)) belts, scarves, neck ties, shawls, ((skirts,)) raincoats, overcoats, |

| | | | |
|---|---|---|---|
| | | | ((trousers, jeans, pullovers, frocks,)) high-heeled shoes, low-heeled shoes, boots, tennis shoes; ((hats)). |
| | 3,107,072 | June 20, 2006 | IC 09. Spectacles, sunglasses and spectacle cases.<br><br>IC 18. Leather and imitation leather products, namely, traveling bags, traveling sets comprised of bags or luggage, trunks and suitcases, garment bags for travel purposes; vanity cases sold empty, rucksacks, shoulder bags, handbags, attaché cases, document wallets, and briefcases made of leather, pouches made of leather, wallets, purses, business card cases, credit card cases; umbrellas.<br><br>IC 25. Clothing and undergarments, namely, belts, scarves, shawls, jackets, sashes for wear, shoes, boots. |
| | 4,192,541 | August 21, 2012 | IC 09. Sunglasses; spectacles; accessories for telephones, mobile telephones, smart phones, PC tablets, personal digital assistants, and MP3 players, namely, covers, housings, and neck straps.<br><br>IC 14. Jewelry; tie pins; jewelry boxes; watches; watch bands; cases for timepieces.<br><br>IC 16. Printed matter, namely, catalogs, and books in the field of travel, luggage, luxury goods, fashion, clothing, sports, the arts; stationery articles, namely, writing books, drawing books, notebooks, covers for diaries, indexes, and pads; office |

| | | | |
|---|---|---|---|
| | | | requisites, namely, pencil, holders, pen holders, postcards. IC 18. Boxes of leather or 0◊0 imitation leather for packaging and carrying goods; traveling bags; trunks; suitcases; vanity cases sold empty; toiletry bags sold empty; backpacks; handbags; attaché cases; leather document cases; wallets; purses; leather key cases.<br><br>IC 24. Textiles and textile goods, namely, bath linen, towels.<br><br>IC 25. Clothing, namely, shirts, tee-shirts, pullovers, skirts, dresses, trousers, coats, jackets, belts for clothing, scarves, sashes for wear, gloves, neckties, socks, bathing suits; footwear; headwear. |

Plaintiff's Marks are well-known and serve as "symbols of [Plaintiff's] quality, reputation, and goodwill." *Id.* ¶¶ 17–18. Plaintiff's Marks have been commercially used for a prolonged period of time and have never been assigned or licensed to Defendant. *Id.* ¶ 16. Due to Plaintiff's advertising and promotional efforts, consumers readily identify products sold with Plaintiff's Marks as high-quality. *Id.* ¶¶ 18–20.

Plaintiff alleges that Defendant is using "counterfeit and confusingly similar imitations" of Plaintiff's Marks to initially attract consumers to Defendant's e-commerce store, without authorization to use Plaintiff's Marks. *Id.* ¶ 23. "Defendant's counterfeit goods are of a quality substantially different than that of" Plaintiff's genuine goods, and Defendant is using Plaintiff's Marks "with the knowledge and intent that [its] goods will be mistaken for the genuine high-quality goods" that Plaintiff offers for sale. *Id.* ¶ 24. "Defendant's actions are likely to cause confusion of

customers, at the time of initial interest, sale, and in the post-sale setting, who will believe all of Defendant's goods offered for sale in or through Defendant's e-commerce store" are Plaintiff's genuine goods. *Id.* Defendant's actions are "causing harm to [Plaintiff] and the consuming public by (i) depriving [Plaintiff] and other third parties of their right to compete for space online and within search engine results fairly and reducing the visibility of [Plaintiff's] genuine goods on the World Wide Web, (ii) causing an overall degradation of the value of the goodwill associated with [Plaintiff's] Marks by viewing inferior products in either the pre or post sale setting, and/or (iii) increasing [Plaintiff's] overall cost to market its goods and educate consumers about its brand via the Internet." *Id.* ¶ 26. Defendant's infringing actions have directly and proximately caused Plaintiff harm. *Id.* ¶ 36. Plaintiff "is suffering irreparable injury" and "has no adequate remedy at law" available. *Id.* ¶¶ 34–35. Absent permanent injunctive relief, Plaintiff "and the consuming public will continue to be harmed while Defendant wrongfully earns a substantial profit." *Id.* ¶ 35.

According to the Declaration of Hadrien Huet in Support of Plaintiff's Motion for Entry of Final Default Judgment, prior to filing this action, Plaintiff "retained AED Investigations, Inc., a licensed private investigative firm ('AED'), to investigate the suspected sale of counterfeit [Plaintiff] branded products by Defendant." DE 19-1 ¶ 10. "AED accessed Defendant's e-commerce store operating under the E-commerce Store Name and placed an order for the purchase of, at least, one product bearing and/or using counterfeits of one or more of the [Plaintiff's] Marks at issue in this action from Defendant." *Id.* ¶ 11. Plaintiff then conducted a review of the branded good purchased from Defendant and determined that the branded good was a "non-genuine, unauthorized [Plaintiff] branded product." *Id.* ¶ 12. Hadrien Huet further confirmed that "Defendant does not have authorization to use [Plaintiff's] Marks or name in connection with its E-commerce Store Name." *Id.* ¶ 13.

In its four-count Complaint, Plaintiff seeks damages and injunctive relief for Trademark Counterfeiting and Infringement Pursuant to § 32 of the Lanham Act (15 U.S.C. § 1114) (Count I); False Designation of Origin Pursuant to § 43(a) of the Lanham Act (15 U.S.C. § 1125(a)) (Count II); Common Law Unfair Competition (Count III); and Common Law Trademark Infringement (Count IV). DE 1 at 15–19. In the prayer for relief, Plaintiff seeks, among other things: (1) permanent injunctive relief, (2) statutory damages, and (3) reasonable attorneys' fees and investigative fees associated with bringing this action. *Id.* at 19–27.

Plaintiff filed a Renewed Motion for Order Authorizing Alternate Service of Process on Defendant Pursuant to Federal Rule of Civil Procedure 4(f)(3), requesting that the Court enter an order allowing Plaintiff to serve Defendant through alternate means. DE 12. Judge Artau granted that Motion. DE 13. Plaintiff served Defendant through alternate means on June 4, 2026, making Defendant's response to the Complaint due by June 25, 2026. DE 16. Defendant did not respond to the Complaint or seek an extension of time to respond before the deadline. Plaintiff filed a Motion for Clerk's Entry of Default on June 26, 2026, and the Clerk thereafter entered default. DE 17; DE 18. This Motion for Entry of Final Default Judgment followed. DE 19.

## II. Legal Standards

### A. Default Judgment

A court may enter a default judgment against a party who has failed to plead or otherwise defend an action. Fed. R. Civ. P. 55(a). "A defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established." *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009) (quotation marks omitted). The defendant does not, however, admit facts that are not well-pleaded or conclusions of law. *Surtain v. Hamlin Terrace*

*Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015). A court considering entering a default judgment must ensure that the pleading states a claim upon which relief can be granted. *Id.*

**B. Injunctive Relief**

Under the Lanham Act, a court is authorized to issue an injunction "according to the principles of equity and upon such terms as the court may deem reasonable" to prevent violations of trademark law. 15 U.S.C. § 1116(a). The "remedy of choice for trademark and unfair competition cases" is injunctive relief "since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Burger King Corp. v. Agad*, 911 F. Supp. 1499, 1509–10 (S.D. Fla. 1995) (quotation marks omitted). Injunctive relief is available even in a default judgment setting. *Chanel, Inc. v. Sea Hero*, 234 F. Supp. 3d 1255, 1261–62 (S.D. Fla. 2016) ("Defendants' failure to respond or otherwise appear in this action makes it difficult for Plaintiff to prevent further infringement absent an injunction."). A court has "broad equity powers [that] allow it to fashion injunctive relief necessary to stop the Defendants' infringing activities." *Tiffany (NJ) LLC v. Individuals, P'ships, & Unincorporated Ass'ns Identified on Schedule "A"*, No. 20-cv-60299, 2020 WL 4501770, at *6 (S.D. Fla. June 26, 2020).

To obtain permanent injunctive relief, a plaintiff must demonstrate that (1) the plaintiff has suffered irreparable injury; (2) there is no adequate remedy at law; (3) the balance of hardships favors an equitable remedy; and (4) the issuance of an injunction is in the public's interest. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). In trademark cases, "a sufficiently strong showing of likelihood of confusion [caused by trademark infringement] may by itself constitute a showing of . . . a substantial threat of irreparable harm." *El Palacio de Los Jugos, Inc. v. El Patio de Los Jugos USA Corp.*, No. 19-24642-CIV, 2020 WL 13358553, at *4 (S.D. Fla. Feb. 10, 2020) (alteration in original) (quotation marks omitted). Courts have found that "[a]n award of money

damages alone will not cure the injury to Plaintiff's reputation and goodwill that will result" if a defendant is permitted to continue its infringing actions. *Id.* Further, a defendant "face[s] no hardship from an injunction prohibiting [its] unlawful activities." *Affordable Aerial Photography, Inc. v. Palm Beach Real Est., Inc.*, No. 20-81307-CIV, 2021 WL 2823270, at *6 (S.D. Fla. July 7, 2021).

**C. Damages**

Once a plaintiff has established a basis for liability, the court must determine the appropriate damages. *PetMed Express, Inc. v. MedPets.Com, Inc.*, 336 F. Supp. 2d 1213, 1217 (S.D. Fla. 2004). A court may conduct an evidentiary hearing before entering default judgment if a hearing is needed to determine the amount of damages. Fed. R. Civ. P. 55(b)(2)(B). However, an evidentiary hearing is not a *per se* requirement of entry of default judgment. *S.E.C. v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005). No hearing is needed "where all essential evidence is already of record." *Id.* The court may award statutory damages "without holding an evidentiary hearing based upon affidavits and other documentary evidence if the facts are not disputed." *Perry Ellis Int'l, Inc. v. URI Corp.*, No. 06-22020-CIV, 2007 WL 3047143, at *1 (S.D. Fla. Oct. 18, 2007).

The court has "wide discretion in awarding statutory damages." *PetMed Express*, 336 F. Supp. 2d at 1219. "An award of statutory damages is appropriate despite a plaintiff's inability to provide actual damages caused by a defendant's infringement." *Chanel, Inc. v. besumart.com*, 240 F. Supp. 3d 1283, 1292 (S.D. Fla. 2016). Under the Lanham Act, a court may award a minimum of $1,000.00 and a maximum of $200,000.00 in statutory damages "per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(1). "[I]f the court finds that the use of the counterfeit mark was willful," the court may

award statutory damages of no more than $2,000,000.00 "per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." *Id.* § 1117(c)(2). "A defendant's trademark infringement is 'willful' when the infringer acted with actual knowledge or reckless disregard for whether its conduct infringed upon the plaintiff's copyright." *Sream, Inc. v. Asat Inc.*, No. 18-14258-CIV, 2019 WL 1573337, at *4 (S.D. Fla. Apr. 11, 2019) (quotation marks omitted).

## III. Analysis

Plaintiff's Complaint contains well-pleaded allegations of fact for each claim as detailed below. By its default, Defendant has admitted these well-pleaded allegations. *See Eagle Hosp. Physicians*, 561 F.3d at 1307.

### A. Liability

#### 1. Count I – Trademark Counterfeiting and Infringement

To prove liability under the Lanham Act for trademark counterfeiting and infringement, the plaintiff must show "(1) that it had prior rights to the mark at issue and (2) that the defendant had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two." *Abercrombie & Fitch Trading Co. v. Artemis Gesdy*, No. 19-CIV-60287, 2019 WL 4693557, at *2 (S.D. Fla. July 10, 2019) (quotation marks omitted). Plaintiff alleges the following in the Complaint:

> 14. [Plaintiff] is the owner of all rights in and to [certain] trademarks, which are valid and registered on the Principal Register of the United States Patent and Trademark Office . . . .
>
> . . . .
>
> 39. Defendant is promoting and otherwise advertising, selling, offering for sale, and distributing goods bearing and/or using counterfeits and/or infringements of one or more of [Plaintiff's] Marks. Defendant is continuously infringing and inducing others to infringe [Plaintiff's] Marks by using one or more of them to advertise, promote, offer to sell, and/or sell counterfeit and infringing [Plaintiff's] branded goods.

> 40. Defendant's counterfeiting and infringing activities are likely to cause and are causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of Defendant's Counterfeit Goods.
> 41. Defendant's unlawful actions have caused and are continuing to cause unquantifiable and irreparable harm to [Plaintiff] and are unjustly enriching Defendant with profits at [Plaintiff's] expense.
>
> . . . .
>
> 43. [Plaintiff] has suffered and will continue to suffer irreparable injury and damages while Defendant is unjustly profiting due its above-described activities if Defendant is not permanently enjoined.

DE 1 ¶¶ 14, 39–41, 43. These allegations adequately plead the elements of a claim under the Lanham Act of trademark counterfeiting and infringement. Plaintiff is entitled to default judgment against Defendant as to Count I.

**2. Count II – False Designation of Origin**

Liability under the Lanham Act for false designation of origin arises when "an entity . . . misrepresents the nature, characteristics, qualities, or geographic origin of its services in commercial advertising or promotion." *Sovereign Mil. Hospitaller Ord. of Saint John of Jerusalem of Rhodes & of Malta v. Fla. Priory of Knights Hospitallers of Sovereign Ord. of Saint John of Jerusalem, Knights of Malta, Ecumenical Ord.*, 702 F.3d 1279, 1294 (11th Cir. 2012) (quotation marks omitted).

> [Courts] have interpreted this language to require a plaintiff to demonstrate that: (1) the defendant's statements were false or misleading; (2) the statements deceived, or had the capacity to deceive, consumers; (3) the deception had a material effect on the consumers' purchasing decision; (4) the misrepresented service affects interstate commerce; and (5) it has been, or likely will be, injured as a result of the false or misleading statement.

*Id.* Plaintiff alleges the following in the Complaint:

> 31. Defendant's wrongful conduct is likely to create a false impression and deceive customers, the public, and the trade into believing there is a connection or association between [Plaintiff's] genuine goods and Defendant's Counterfeit Goods, which there is not.
>
> . . . .

> 47. Defendant has used in connection with its advertisement, offer for sale, and sale of its Counterfeit Goods, false designations of origin and false descriptions and representations, including words or other symbols and designs, which falsely describe or represent such goods and have caused such goods to enter into commerce in the United States with full knowledge of the falsity of such designations of origin and such descriptions and representations, all to [Plaintiff's] detriment.
> 48. Defendant has authorized infringing uses of one or more of [Plaintiff's] Marks in Defendant's advertisement and promotion of its counterfeit and infringing branded goods. Defendant has also misrepresented to members of the consuming public that the Counterfeit Goods it has advertised and sold are genuine, non-infringing goods.
> 49. Defendant is using counterfeits and infringements of one or more of [Plaintiff's] Marks to unfairly compete with [Plaintiff] and others for space within organic and paid search engine and social media results. Defendant is thereby (i) depriving [Plaintiff] of valuable marketing and educational space online which would otherwise be available to [Plaintiff] and (ii) reducing the visibility of [Plaintiff's] genuine goods on the World Wide Web and across social media platforms.
>
> . . . .
>
> 51. [Plaintiff] has no adequate remedy at law and has sustained injury and damages caused by Defendant's conduct. Absent an entry of an injunction by this Court, [Plaintiff] will continue to suffer irreparable injury to its goodwill and business reputation, as well as monetary damages, while Defendant is unjustly profiting.

DE 1 ¶¶ 31, 47–49, 51. These allegations adequately plead the elements of a claim under the Lanham Act for false designation of origin. Plaintiff is entitled to default judgment against Defendant as to Count II.

**3. Count III – Common Law Unfair Competition**

Under Florida common law, the test for unfair competition is whether there is a likelihood of confusion. *Abercrombie & Fitch Trading Co.*, 2019 WL 4693557, at *3 ("Whether a defendant's use of a plaintiff's trademarks created a likelihood of confusion between the plaintiff's and the defendant's products is also the determining factor in the analysis of unfair competition under the common law of Florida."). Plaintiff alleges the following in the Complaint:

> 54. Defendant is promoting and otherwise advertising, selling, offering for sale, and distributing goods bearing and/or using counterfeits and infringements of one or more of [Plaintiff's] Marks. Defendant is also using counterfeits and

> infringements of one or more of [Plaintiff's] Marks to unfairly compete with [Plaintiff] and others for (i) space in search engine and social media results across an array of search terms and (ii) visibility on the World Wide Web.
>
> 55. Defendant's infringing activities are likely to cause and are causing confusion, mistake, and deception among consumers as to the origin and quality of Defendant's e-commerce store as a whole and all products sold therein by its use of [Plaintiff's] Marks.

DE 1 ¶¶ 54–55. These allegations adequately plead a claim of unfair competition under Florida common law. Plaintiff is entitled to default judgment against Defendant as to Count III.

**4. Count IV – Common Law Trademark Infringement**

Under Florida common law, liability for trademark infringement follows the same analysis as does liability for trademark infringement under the Lanham Act. *Abercrombie & Fitch Trading Co.*, 2019 WL 4693557, at *3. Plaintiff alleges the following in the Complaint:

> 58. [Plaintiff] is the owner of all common law rights in and to [Plaintiff's] Marks.
>
> . . . .
>
> 60. Defendant is promoting and otherwise advertising, distributing, offering for sale, and selling goods bearing and/or using infringements of one or more of [Plaintiff's] Marks.
>
> 61. Defendant's infringing activities are likely to cause and are causing confusion, mistake, and deception among consumers as to the origin and quality of Defendant's Counterfeit Goods bearing and/or using [Plaintiff's] Marks.

DE 1 ¶¶ 58, 60, 61. These allegations adequately plead a claim of trademark infringement under Florida common law. Plaintiff is entitled to default judgment against Defendant as to Count IV.

**B. Injunctive Relief and Damages**

Plaintiff requests permanent injunctive relief and statutory damages against Defendant for trademark infringement under Count I. DE 19 at 9–18. Plaintiff has limited its request for damages for Counts II through IV to the amount awarded under Count I. *Id.* at 19.

**1. Injunctive Relief**

Plaintiff has met the requirements to obtain a permanent injunction. First, Plaintiff has shown that it has suffered and will continue to suffer irreparable injury absent an injunction. *Id.* at 10–11. Plaintiff has identified certain marks, Plaintiff's Marks, to which Plaintiff holds U.S. trademarks. There is a strong likelihood of confusion between Plaintiff's genuine trademark use and Defendant's unauthorized use of Plaintiff's Marks on counterfeit goods sold and distributed in the marketplace. Without an injunction, Defendant will continue selling the infringing goods and diluting Plaintiff's goodwill and rightful share of the e-commerce marketplace.

Second, there is no adequate remedy at law to alleviate Plaintiff's injury. Monetary damages alone will not suffice as, absent an injunction, Defendant will continue to infringe on Plaintiff's Marks with counterfeit goods. A monetary award will not cure Plaintiff's reputation and goodwill.

Third, prohibiting Defendant from using Plaintiff's Marks will not create a hardship for Defendant because it has no right to use Plaintiff's Marks. However, absent an injunction, Plaintiff will continue to suffer hardship from Defendant's sale and marketing of infringing and counterfeit products.

Fourth, issuance of a permanent injunction against Defendant will serve the public interest. An injunction will prevent consumers from being misled and lessen confusion in the marketplace. The Court recommends entering a permanent injunction in favor of Plaintiff and against Defendant.

**2. Statutory Damages**

Plaintiff seeks statutory damages under 15 U.S.C. § 1117(c) for Count I and requests an award of $100,000 against Defendant. Plaintiff's request for statutory damages of $100,000

against Defendant is in line with the statutory damages awarded in similar cases. *E.g.*, *Louis Vuitton Malletier v. I0Y3R8UUI5O*, No. 0:26-CV-60226, 2026 WL 1666857, at *8 (S.D. Fla. May 21, 2026) (awarding $120,000 per trademark counterfeited per type of good offered and/or sold by the defendant); *Tissot SA v. Rotwatches.com*, No. 1:24-CV-24767-KMM, 2025 WL 3553643, at *6 (S.D. Fla. Oct. 7, 2025) (awarding $100,000 in statutory damages per defendant). The Court recommends awarding Plaintiff $100,000.00 in statutory damages against Defendant.

## IV. Recommendation

For the foregoing reasons, the Court recommends that Plaintiff's Motion for Entry of Final Default Judgment Against Defendant [DE 19] be **GRANTED** and a Final Default Judgment and Permanent Injunction be entered against the Defendant. The Court recommends adopting Plaintiff's proposed language for the permanent injunction. *See* DE 19-5.

Within fourteen days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations. 28 U.S.C. § 636(b)(1); S.D. Fla. Mag. R. 4(a). The parties are hereby notified that a failure to timely object waives the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation. 11th Cir. R. 3-1 (2014).

**DONE AND SUBMITTED** in Chambers at Fort Lauderdale, Florida, this 22nd day of October, 2026.

PANAYOTTA AUGUSTIN-BIRCH
UNITED STATES MAGISTRATE JUDGE